Thank you both for your argument in this matter. The next matter on calendar is We The Patriots USA and Jane Doe v. Ventura Unified School District, Case Number 25-5239. Okay, and each side has 10 minutes here. I note that the appellees who don't have rebuttal time have designated Jacqueline Young to have six minutes, Leonard Garfinkel to have one minute, and David Adida to have three minutes. Is that semi-correct? That is correct, Your Honor. Okay. So, oh, okay, I was going to say I don't see three of you there, but there's the third. Okay, and so we're ready to proceed. Good morning, Your Honor. Cameron Atkinson for We The Patriots USA and Jane Doe. May it please the Court, may I have two minutes for rebuttal, please? If it works, that's aspirational, but as you've seen, but yes, I will note that. Thank you. Thank you, Your Honor. With respect to likelihood of the success on the merits, I've been listening to the arguments previously, and I think what we're talking about on a broader doctrinal level here is where do we look for a source to reconcile the conflict between the state's police power and protecting public health and the First Amendment right, and to us, you look at Marabelli for that because at a conceptual level, like it or not, the state had concerns about gender dysphoria in Marabelli. It enacted policies, the districts followed. Counsel, before you get to the merits, I think there's a jurisdictional question that we should be addressing too, correct? Sure, Your Honor. I can start there. So with respect to the jurisdictional issue, we do believe you need to treat this case as a preliminary injunction. We asked Judge Berardi for a preliminary injunction twice. There were conflicting procedural messages sent by Judge Berardi, in our view. He denied our initial application for what would be a two- Well, we care about our jurisdiction, so why should we construe the district court's August 15, 2025 order as an appealable denial of a motion for a preliminary injunction instead of the denial of an application for a temporary restraining order, which is not appealable? We- So one gets you in the door, the other you're out. I understand that, Your Honor, and to us, we look at your precedent in MR versus Dreyfus, where a motions panel of this court found that in order to staying a preliminary injunction or staying a case and canceling a preliminary injunction because of a TRO appeal was rendered the denial tantamount to denying the preliminary injunction. I recognize that there is an argument to distinguish that case here, but really what we're looking at is we did ask for a preliminary injunction. We used the e-filing event that would allow us to ask for a preliminary injunction. Maybe you can just clarify to me to make sure I understand the procedural part on this. So you decided to file your lawsuit and you filed it, and then you went in for a TRO? Yes, Your Honor. Without notice? Yes, Your Honor. And the district court said, no, you can't do that? Yes, on a finding of there was no irreparable harm because we waited too long. Well, no, no, wait a minute. Also, they didn't comply with local rules. Yeah, but so you went in for a TRO without giving notice to the other side, is that correct? Not exactly because we did make efforts to contact their office pursuant to Federal Rule Civil Procedure 65. We did make attempts to do notice on that initial application. We reported. And Judge Barat said, no, you can't. That doesn't work. You got to give notice here. Yes, Your Honor. Right, and he denied it. Correct. Right, and then you waited, what was it, two months? Approximately, yes. And then you went in on another application for a TRO, and it said application for TRO and preliminary injunction? Yes, Your Honor. And the district court denied it again? Yes, Your Honor. And now you're saying that he actually denied the preliminary injunction? Yes, because we were clear. Because you asked for a preliminary injunction? Yes, Your Honor.  Because we were, and his order does state that he was denying everything. Granted, it's not the clearest denying everything. There is an argument. Didn't he cite the local rules as the basis for the denial? As one of the basis, Your Honor. What was the other basis? I can't recall right now. I believe he had five basis for denying it. One was the irreparable harm. The one was not having a sworn affidavit pursuant to local rule 65. I recall a couple of additional arguments about whether, or findings about whether we were asking for ex parte relief or whether we were asking for expedited relief. He concluded we were asking for ex parte relief. I recall an additional argument, or I recall an additional conclusion that we didn't have the right to notice a motion. Did you ask him in that application to set a hearing on the preliminary injunction? Yes, Your Honor. And what did he do with that? That was one of the basis for citing procedural noncompliance. Usually you have to give notice to the other side if you're going to ask for an order of shortening time. All the parties, to my understanding, had appeared in the case. Were they there when you applied for this temporary straining order and preliminary injunction? Yes, they had. Everybody showed up at the same time on the TRO? There was no TRO hearing, Your Honor. We e-filed it. Everybody got notice of the application through the e-filing system. There were no oral. So you didn't ask him to set, you didn't ask him to shorten time and set a preliminary injunction hearing? What we did is we asked him to set it and then on the e-filing system there was a box for the filing event that we used that would not allow us to proceed until we noticed as if we were noticing a regularly noticed motion. I went to Judge Berardi's calendar. I looked at his chamber preferences. I selected a date that I thought complied with his chamber. And it didn't? His basis for his order on that, as I recall it, was that we did not have the right to set that. He had the right to set that. And so we did make an attempt. If you don't give the notice that's required by the federal rules and by the local rules, then he absolutely has the right to set it. I understand that, Your Honor. And that invokes all kinds of other procedures. And this is why I relate this to you because I used to do this. I did this as a district court judge. I understand that, Your Honor. And I wasn't surprised that Judge Berardi, I mean he just didn't comply with the procedures. Well, to me, the only place that I believe we did not comply with the procedures was on the local Rule 65 certification. I did it as a federal rule, 65 certification, which I, on my understanding. Well, counsel, in the normal course, after Judge Berardi denied that second motion, you could have filed another one, right? Another case for a preliminary and firm preliminary injunction using presumably then the rules that he set out, but then it was stayed. Correct. Right? Yes, Your Honor. So how does that play into whether or not we have jurisdiction here? It's a tantamount denial because I would have to go back and have him vacate the stay order. The rationale for the stay order was we have these other cases out there. It's more efficient to resolve these other cases, including the cases in front of me this morning. And I'm going to stay it and let it be efficient. Can I ask, do you think that we had appellate jurisdiction based off of the denial of the second order by itself because that was a denial of a preliminary injunction? Or do you also need the fact that a stay was entered shortly afterwards, which then makes it tantamount that you can't apply for a preliminary injunction? We argued both. I read his order on his face as denying everything. And then the stay was just icing on the cake where I can never get back in there unless he vacates that. And reading the rationale for his stay order, it would have been futile because nothing changed under the reconsideration standard. I think we're aware of the procedures here. If you don't, do you have any additional questions? OK, you're basically almost out of town. So I'll give you time if you want two minutes for rebuttal. I suggest we listen to the other side. Thank you. Thank you. Good morning. Good morning, your honors. May it please the court. Jacqueline Young appearing on behalf of a Pele. Dr. Erica Palm. Like Royce and Grimsby, this case raises important questions about the intersection of public health law and religious liberty. We do not minimize those questions or the sincerity of the parents who raise those questions. But in this appeal, this court should not reach the merits for three reasons. First, this appeal should be dismissed for lack of jurisdiction. As Judge Callahan noted, T.R.O. denials are generally not appealable. And here, appellants have not established an applicable exception. Second, even if this court finds that there is jurisdiction, as Judge Paez noted, there are multiple procedural violations. And here, the district court's order should be affirmed on procedural grounds. And finally, third, this record is incomplete and unfit for appellate review because it stems from serial T.R.O. filings and has not been developed by all parties through ordinary adversarial process. Starting on the first issue of jurisdiction, appellant's argument here is twofold. Appellants ask this court to treat their T.R.O. denial as a P.I. denial. And they base this on the fact that the title of their document, the title of their application, included the words preliminary injunction. However, in the Supreme Court's case of Abbott v. Perez, it's well established that the label attached to a document is not dispositive. There, the court looked at whether or not the T.R.O. denial had the practical effect of a denial of a P.I. In this court, this court applies the tantamount exception of whether the T.R.O. denial is a merits-based decision that follows full briefing and a full adversarial hearing. None of those circumstances, none of those hallmarks are present here. And that's been apparent by the litigation choices that appellants have made. So your argument is that because it's just merely a label of preliminary injunction, I think that's right. It just says it on the label. Does it address preliminary injunction in the body of that motion? Not to the substance, Your Honor. It does seek injunctive relief. And in parts of the application, it does ask the court to set an expedited hearing for a preliminary injunction. But, Your Honor, again, looking back and going through the procedural history that Judge Paez noted, none of the actions taken by appellants here have indicated that they actually sought to comply with Federal Rule of Civil Procedure 65. Well, that's a separate question whether or not they complied with the procedures. This question is whether or not they were seeking a preliminary injunction. If they were legitimately seeking a preliminary injunction, no matter what reason they were denied, we would have appellate jurisdiction. Wouldn't you agree? Yes, Your Honor. Had they filed a motion for preliminary injunction, there would be jurisdiction. Well, assuming that, yeah, that's right. Assuming that they did. Yeah, whatever the court then did. Right. But I guess my question, are you suggesting they didn't file for preliminary injunction or that we should just exclude the label, the superficial labeling? What's your argument exactly? The argument is that here, and appellants conceded in their briefing, they did not file or seek a motion for preliminary injunction. Instead, what they sought was emergency relief from the district court for an expedited hearing. Granted, the relief that they seek between the TRO and the PI on a macro level is to enjoin the state's enforcement administration of the school vaccine law. But with the TRO application itself, they were seeking emergency relief. And here, the district court did not abuse its discretion in finding that they did not establish an urgent need for that emergency relief. Yeah, I mean, that's going to the merits, though. I'm still just trying to get to the question of whether or not they were seeking a preliminary injunction. It seems like they were. I don't think they conceded they were not. It seems like they were not using proper procedures or proper language, but it does seem like they were trying to get a preliminary injunction. Yes, Your Honor. It goes back and forth. In the TRO application, they note we are not asking for ex parte relief for an expedited hearing for a preliminary injunction. Right. So if we decide they're not seeking, if they haven't properly sought a preliminary injunction and we dismiss it because we don't have jurisdiction, if we decide that somehow that they were trying to but not very successfully, then your position is that we should just affirm the judge for kicking it out for all the violations of the rules, right? Yes, Your Honor. Even if this court were to grant them and grant their claims and say that they were trying to and unsuccessfully sought a preliminary injunction, then we look at the procedural violations. Here, Judge Paez asked about ex parte notice. It's not just a matter of ex parte notice, Your Honor. Between the months of filing the suit and initiating this appeal, appellants sought out five different TRO applications, three before the district court, an emergency motion for injunction pending appeal in this court, and a writ of injunction before the Supreme Court. They did all of this without serving four of the six defendants. So here, another reason why the district court's order should be affirmed on procedural grounds is at the time that they filed the second TRO application, the district court had no jurisdiction over the Department of Public Health, the state superintendent, or the Ventura district attorney to issue any of the relief that they were seeking through either their TRO slash PI. Okay, so dismiss or affirm is your position? Yes, Your Honor. Any other questions? Just one quick one. How does the fact that the proceedings were stayed shortly after the denial play into it? Because in the normal course, if the judge denied it, they could have filed again for a preliminary injunction and then followed all the proper procedures as the judge told them to do, but then they were precluded from doing that by the stay. Does that then make it tantamount to denial of preliminary injunction? No, Your Honor, and two points there. First, the first TRO denial was issued on June 17th. They had filed their first TRO application on May 24th, two days after their complaint. In that order, the district court expressly noted there's no basis here for why this matter cannot be put on a regular notice motion. So there was an instruction from the district court, file your motion for an injunction and we can decide the merits. They did not do that. They waited two months to seek a second TRO. But they were trying to compromise, right? They're trying to get a settlement. So anyway, keep on going. And the second point, Your Honor, is we can just go back to the previous case of Grimsby. In Grimsby, the Department of Public Health also filed a motion for stay. And the Grimsby plaintiffs, they filed a motion for preliminary injunction. And today, they were properly before this court with jurisdiction. So the tantamount exception here, Your Honor, in terms of whether or not this court should treat the PI denial as with the practical effect of a PI denial, the circumstances, and under this court's precedence and the Supreme Court precedence, the answer is no. Okay, thank you. So then we're going to, are we hearing from Mr. Garfinkel? You have one minute. So say your name quickly. Good morning, Your Honors. Len Garfinkel for Superintendent Thurmond. I'd like to briefly emphasize the jurisdictional point. The Department of Education was not notified of or served with appellant's requests for relief and therefore not given the opportunity to respond. The appellant does not address and therefore concedes the point. I'm mindful of time here, so I'm open to any questions from the court. But if there are no questions, I'll defer to leave plenty of time for counsel for the school district. Okay, you left 33 minutes for, 33 seconds or whatever for Mr. Adida. May it please the court, David Adida, the attorney for the Appellee's Federal Unified School District and Superintendent Castro. I promised my colleague that I would not say anything about the issues that they talked about, but I have to, and I believe it's in answer to your question with respect to the tantamount labeling. Yes. I don't believe it applies for this reason, Your Honor. The TRO slash preliminary injunction was denied, right? And then there's a period of nine days where the appellant then files a notice of appeal. And then after that notice of appeal is filed, that's when we have the proceedings that resulted in the order to stay to district court. So by the time they filed their notice of appeal, there was no order to stay in existence. So they can't use that now to say, oh, by the way, dismissal, dismissal, oops, order to stay. Now we have tantamount dismissal. So that appeal that was filed before the stay is what's now on appeal now? Correct, yes. That's fair. Okay, going back to the issues involving these appellees, the appellant argues that Cone v. State of California should be, requires this court to reopen the armor of the state analysis for school district. I say it doesn't, and not simply because Cone specifically noted that its refined framework was unlikely to lead to different results. But even if we did, the three factors articulated in Cone are lenses through which the court examines a single overarching question. When you look at how California has actually set up this entity, not just what the label it carries, not what powers it may have on paper, but the full picture. The full picture of where it came from, who controls it, and whose money is at stake. Is this really a piece of the state operating at the local level or is it a generally independent local body that happens to receive state funds? Well, if we go through that structural assessment, it's clear that in California, school districts are instrumentalities operating at the local level. In California, it's the state's obligation to provide a public education. The state funds it through a system Belanger said was hopelessly intertwined. The state regulates it through mandatory accountability requirements that SATO held reflect ongoing state dominance. And the state remains constitutional responsible when it fails. So, for example, in Butt v. State, when a district was about to close its schools, the California Supreme Court ordered state officials to prevent the unconstitutional school closure. Sure, boards have, there's an elected board, the power to sue, the property holdings. Those are operational features that California gave school districts so that they could function day to day. These local attributes were specifically considered and explicitly rejected in SATO. They do not make Ventura Unified School District independent of the state any more than giving a branch office its own letterhead makes it independent from the parent company. And if I have a little bit more time, I will go into the expo. You have a minute and 17 seconds. Beautiful. Oh, wait, no, you're on overtime. You don't have more time. Oh, I don't have more time. You don't have more time. Let me see if you want me. Do you have any more questions? No. Nope. You don't have more time. Thank you. Okay. Thank you. Appreciate it. This matter is submitted. Did you have rebuttal? Yes, we do. Oh, no. You have rebuttal. Yeah. I'm sorry. Yeah. I'm just going crazy here. Okay. With the time clock. Okay. Thank you, Judge Bumate. Of course. Thank you. So with respect to the 11th Amendment argument, you should not resolve 11th Amendment at this stage in the proceeding simply because of the Orange County case. In Orange County, the school district sued the state of California over a federal funding issue. And the state of California didn't assert immunity. It allowed a dispute between essentially what is now being claimed as interstate agencies to be resolved by federal court. The schools are created. The local school agencies are created as separate entities. They do act as separate entities. And we believe they would, under the Cone test, they are indeed separate and not appropriate for 11th Amendment immunity. If the court does not have further questions, I'll rest on the briefs. We do not. All right. Thank you. Thank you, everyone, for your argument. That matter will stand submitted.
judges: PAEZ, CALLAHAN, BUMATAY